UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MELISSA P. SHATTUCK,<br><br>     Plaintiff<br><br>v.<br><br>JOHN E. POTTER, Postmaster General,<br>United States Postal Service,<br><br>     Defendant | Civil No. 05-92-P-C |

Gene Carter, Senior District Judge

**ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

  Now before the Court is Defendant's Motion for Partial Summary Judgment (Docket Item No. 34).[1] Plaintiff's Amended Complaint alleges, *inter alia*, that she has suffered adverse employment action as a result of engaging in speech protected by the First Amendment (Count V). Amended Complaint ¶¶ 59-69 (Docket Item No. 3).[2] Defendant contends that Plaintiff's speech is not entitled to First Amendment protection, and that, even if it were, it was not a substantial or motivating factor in any allegedly

---

[1] Plaintiff has also filed two motions relating to Defendant's Motion for Summary Judgment: Plaintiff's Motion to Strike Defendant's Summary Judgment Exhibit 12 (Docket Item No. 40) and Plaintiff's Motion to Strike Defendant's Reply to Plaintiff's Opposing Statement of Material Facts (Docket Item No. 52). Both motions seek to strike from the summary judgment record certain submissions made by Defendant. The Court finds that the content of these submissions are immaterial to its disposition of Defendant's Motion for Partial Summary Judgment. Consequently, the Court considers these motions to be moot.

[2] Plaintiff also alleges Sex Discrimination (Count I) and Retaliation (Count III). On Plaintiff's motion, the Court has dismissed Plaintiff's claims of an Equal Pay Act Violation (Count II) and Sexual Harassment (Count IV).

adverse employment action. For the reasons stated below, no trialworthy issues remain on this claim, and Defendant is entitled to a judgment as a matter of law on Count V of Plaintiff's Amended Complaint.[3]

## I. Facts

The Court views the record on summary judgment in the light most favorable to the nonmovant. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1st Cir. 2000). The summary judgment record supports the following relevant facts.

Defendant in this action is John E. Potter, in his official capacity as Postmaster General and CEO of the United States Postal Service (hereinafter "USPS"). Plaintiff, Melissa P. Shattuck, worked for the USPS from April 1994 until March 2005. Her initial position was as Employee Assistance Program Coordinator for the District of Maine. In this position Plaintiff worked to address the problems of violence on the workroom floor and to assist in the reduction of the likelihood of violent incidents. Defendant's Statement of Material Facts ¶ 3 (hereinafter "DSMF") (Docket Item No. 35). In approximately 2000, Plaintiff's job title changed to Workplace Improvement Analyst. At this time her role in the Employment Assistance Program changed from a very active role to a consultative role. *Id*. at ¶ 4. Aside from this, however, her position did not change significantly. *Id.* Plaintiff continued to participate and take the lead in crises response, threat assessment, developing climate assessment, and office surveys. *Id.* Plaintiff also served as chair of the Maine District Reasonable Accommodation Committee, which is responsible for considering, recommending, and/or denying requests for reasonable

---

[3] Although Defendant's Motion for Partial Summary Judgment also seeks judgment on Counts II and IV of the Amended Complaint, those counts have since been dismissed. Accordingly, the Court will treat as moot Defendant's request for summary judgment of those claims, and will address only Defendant's request for summary judgment on Count V.

2

accommodations.  Plaintiff's Statement of Additional Material Facts ¶ 1 (hereinafter "PSAMF") attached as exhibit 1 Plaintiff's Opposition to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Opposition") (Docket Item No. 41).  Beginning in 1997, Plaintiff's supervisor was Michael Donahue, the Manager of Human Relations.  DSMF ¶ 9.

In addition to the duties described above, Plaintiff developed the District's Threat Assessment Team (hereinafter "TAT").  PSAMF ¶ 11.  The TAT served as a forum for discussing employee issues by "just basically get[ting] everybody with the information in the same room."  Deposition of Melissa Shattuck at 39, lines 7-17, attached as exhibit 1 to DSMF.  Mr. Donahue did not support the TAT, at least in part, because of confidentiality concerns.  PSMF ¶ 14; Deposition of Michael Donahue at 98, lines 10-18, attached as exhibit 3 to DSMF.  On April 14, 2000, Plaintiff, along with other members of the TAT, sent a letter to the District's Lead Plant Manager and Manager of Customer Service and Sales.  PSAMF ¶ 85, 86; Exhibit 8, attached to Plaintiff's Opposition.  The letter alleged that there were ongoing concerns among members of the TAT and other District managers and supervisors regarding "the lack of adequate security precautions, measures, [and] safeguards at the Portland plant."  Exhibit 8, at 1.  The TAT chose not to address the letter to Mr. Donahue, although he did receive a copy.  *Id.* at 2.  Within a few years of Mr. Donahue's arrival in the District of Maine, the TAT voluntarily disbanded.  PSAMF ¶ 14.  This occurred because, *inter alia*, "there was a great deal of frustration among team members that they weren't being supported by upper management."  Deposition of Melissa Shattuck at 48, lines 9-11.

3

At some point in time, Plaintiff was assigned the task of developing a children's video addressing the problem of injuries caused by children approaching USPS vehicles. PSAMF ¶ 9. Mr. Donahue liked the video and forwarded it USPS headquarters. PSAMF ¶ 10; Deposition of Melissa Shattuck at 145, line 20. Plaintiff also wanted the video sent to another District in which there had been a recent accident. PSAMF ¶ 10. Mr. Donahue refused to permit Plaintiff to do so. *Id*.

In 2002 Plaintiff became involved in changing the manner in which the District of Maine investigated allegations of sexual harassment. In March, the Office of Inspector General issued a report concerning "sexual harassment prevention measures in Maine." Audit Report attached as exhibit 7 to Plaintiff's Opposition. Plaintiff developed a protocol to implement the report's recommendations and presented it to District leadership. Deposition of Melissa Shattuck at 35, lines 17-19. Mr. Donahue was on sick leave at this time, and was not involved in the development of the protocol. PSAMF ¶ 39. When Mr. Donahue learned of the protocol and that it had been presented to District leadership he was "very, very, angry" because he had not been involved in its development and had not authorized Plaintiff to present it to District leadership. *Id*. at ¶ 43. Mr. Donahue was mostly angry, however, because in the organizational structure developed by Plaintiff, Mr. Donahue was not the coordinator. Deposition of Melissa Shattuck at 78, lines 1-2.

Pursuant to the protocol developed by Plaintiff, she was required to coordinate, monitor, and log management investigations. PSAMF ¶ 42. Despite Plaintiff's position in the investigative hierarchy, Mr. Donahue failed on several occasions to make her aware of sexual harassment investigations. *Id*. at ¶ 51. Plaintiff repeatedly asked Mr.

4

Donahue about his failure to forward these investigations to her. *Id*. at ¶ 52. On one occasion, Mr. Donahue told Plaintiff to author a memo reminding USPS employees that Plaintiff should be informed of sexual harassment investigations. *Id*. On another occasion, Plaintiff informed Mr. Donahue that she believed he was intentionally failing to forward her information on these investigations. *Id*. Mr. Donahue told Plaintiff that he would try and do better. *Id*.

In April 2004, Plaintiff became involved in a dispute concerning an employee's request for an accommodation. An employee informed Plaintiff that he had met with Mr. Donahue and others concerning the employee's request for an accommodation, and that the request had been denied. PSAMF ¶ 2. Although Plaintiff was then serving as chair of the Maine District Reasonable Accommodation Committee, she had not been informed of the alleged meeting. *Id*. at ¶ 3. Plaintiff informed Mr. Donahue that she should have been involved in the meeting. *Id*. at ¶ 4. Following hearing Plaintiff's concerns on the matter, Mr. Donahue agreed that the employee should be put through the committee process, as Plaintiff suggested. *Id*. at ¶ 8. The employee declined to take part in the process. *Id*.

In May 2004, Mr. Donahue forwarded an email to two employees concerning human resources training. *Id*. at ¶ 78. Mr. Donahue advised that if they were interested in the training, the employees could contact him. Mr. Donahue did not send this email to Plaintiff. *Id*. A few days later, another employee forwarded Mr. Donahue's message to Plaintiff. When Plaintiff learned of the training she did not ask Mr. Donahue if she could take part or otherwise pursue it. Deposition of Melissa Shattuck at 133, line 1.

5

Later that month Plaintiff became involved in the grievance of a former employee. Plaintiff disagreed with the decision to terminate the employee and wanted to make sure that his union representative knew all of the important facts for use in his grievance proceedings. PSAMF ¶¶ 30, 31. Plaintiff drafted a letter to the union president and asked Mr. Donahue if there were any regulation prohibiting her from sending it. *Id*. at ¶ 26. Mr. Donahue informed Plaintiff that he did not know of any such rule. Although Mr. Donahue told the Plaintiff that he did not want her to send the letter, he did not order her to refrain from doing so. *Id*. at ¶ 28. Plaintiff subsequently sent the letter.

In December 2004, Mr. Donahue removed Plaintiff from any involvement in management investigations. *Id*. at ¶ 55. Mr. Donahue told Plaintiff that he was doing so because he believed that the role was more appropriately in the labor relations forum and that it was not appropriate for Plaintiff's position. *Id*. at ¶ 56. Despite these instructions, in January 2005, Plaintiff sent an email to various postal service employees, including Mr. Donahue, critiquing a management investigation. Exhibit 12, attached to Plaintiff's Opposition. The message's stated purposes were to "help create a clearer understanding of an effective management investigation," and to explain Plaintiff's opinion that the management investigation reached the incorrect result. *Id*.

In March 2005, Plaintiff left her position and on May 17, 2005, she commenced this action.

## II. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). "A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'" *De-Jesus-Adorno v. Browning Ferris Indus.*, 160 F.3d 839, 841-42 (1st Cir. 1998) (quoting *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995)).

### III. Discussion

In order to succeed on her First Amendment claim, Plaintiff bears the burden of proving that she engaged in protected speech, that she suffered a negative employment action, and that the protected speech was a substantial or motivating factor in that negative employment action. *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir. 2004).

To determine whether speech is protected in this context, courts first determine "whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, --- U.S. ---, ---, 126 S.Ct. 1951, 1958 (2006). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 462 U.S. 138, 147-48, 103 S.Ct. 1684, 1690 (1983). Additionally, when an employee's

7

speech is made "pursuant to his or her official duties," it is not spoken "as a citizen," and, consequently, is not protected. *See Garcetti*, --- U.S. at ---, 126 S.Ct. at 1959.

If a Plaintiff surmounts this initial hurdle then "the possibility of a First Amendment claim arises." *Id*. at ---, 126 S.Ct. at 1958. The question becomes "whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently." *Tripp v. Cole*, 425 F.3d 5, 10 (1st Cir. 2005) (quoting *Mihos*, 358 F.3d at 102). "This consideration reflects the importance of the relationship between the speaker's expressions and employment…. Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it there would be little chance for the efficient provision of public services." *Garcetti*, --- U.S. at ---, 126 S.Ct. at 1958. These initial determinations present a question of law. *Connick*, 461 U.S. at 148, 103 S.Ct. at 1690-91 n.7.

Once a Plaintiff identifies protected speech, she still bears the burden of proving that her protected speech was a substantial or motivating factor in a negative employment action. *Mihos*, 358 F.3d at 102. While this presents an issue of fact, normally a question for a jury, Plaintiff must still present evidence from which a reasonable jury could find in her favor in order to avoid brevis disposition of her claim.

### A. The TAT

Plaintiff alleges that she engaged in protected speech relating to the TAT. Although the record demonstrates that Plaintiff strongly disagreed with the Postal Services' approach to handling such "threats," the only evidence of Plaintiff ever expressing those concerns was the April 14, 2000 letter sent by members of the TAT to

8

the District's Lead Plant Manager and Manager of Customer Service and Sales.[4] Review of this letter reveals that Plaintiff was not speaking "as citizen on a matter of public concern." First, the content of the letter relates to matters predominantly affecting other employees; specifically, safe conditions for workers at the Portland plant. Such matters are not of inherent public concern. *See O'Connor v. Steeves*, 994 F.2d 905, 914 (1st Cir. 1993). Furthermore, the form and context of the speech further illustrate that Plaintiff was not engaging in protected speech. The letter was sent to managers within the Postal Service. Thus, the form of Plaintiff's expression does not demonstrate any "subjective intent to contribute to any … public discourse." *See id*. Lastly, the context in which Plaintiff submitted this letter, as a member of the TAT, demonstrates that it was closely related to her work duties, and less akin to speech made "as a private citizen." Based upon a careful review of the entire record, the Court concludes that Plaintiff has failed to offer any evidence of protected speech relating to the TAT.

### B. Children's Video

Plaintiff alleges that she engaged in protected speech relating to the production of a children's video addressing the problem of injuries caused by children approaching USPS vehicles. In opposing summary judgment, however, Plaintiff fails to identify any speech for which she claims to have been subjected to adverse employment action. As Plaintiff admits, Mr. Donahue, the individual who she accuses of taking adverse employment action against her, liked the video. Furthermore, although Mr. Donahue refused to permit Plaintiff to distribute the video to another district, there is no evidence

---

[4] Although Plaintiff also alleges that she told Mr. Donahue that by discouraging the TAT he had deprived the District of much of its ability to deal with dangerous situations, the materials she cites do not support this allegation. *See* PSAMF ¶ 15. Accordingly, the fact has not been established for summary judgment purposes. *See* Local Rule 56(f).

9

to suggest that he ever held any negative animus toward Plaintiff simply because of her request. The record fails to even disclose when any such speech took place. Assuming, *arguendo*, that Plaintiff engaged in protected speech on this matter, no reasonable jury could conclude that it was a substantial or motivating factor in any adverse employment action. Accordingly, Plaintiff's claim based upon this speech does not raise a trialworthy issue.

### C. Sexual Harassment Investigations

Plaintiff alleges that she engaged in protected speech relating to sexual harassment. Specifically, Plaintiff points to comments she made to Mr. Donahue concerning his failure to forward information concerning sexual harassment investigations for inclusion in the log that she kept. Although Plaintiff asserts that "[a]llegations of sexual harassment are always matters of public concern," Plaintiff's Opposition at 7, she overlooks that her allegedly protected speech did not consist of *allegations* of sexual harassment. Rather, as the record makes clear, Plaintiff protested, at best, the method by which allegations of sexual harassment were being investigated. Even if such allegations could constitute speech on a matter of public concern, the form and context of this plaintiff's speech prevent that result here. Plaintiff was the author of the sexual harassment protocol that she lobbied to enforce. Plaintiff complained that her position in the investigative hierarchy was not being respected. In this context, Plaintiff's complaints appear to be motivated predominantly by her personal desire to be included in the process, and not by any desire to benefit the public at large. Plaintiff never sought to share her concerns with members of the public or other USPS officials. Thus, the form of Plaintiff's speech confirms that her predominant interest was the division of

responsibilities between herself and her supervisor in the work environment, and not in contributing to any public discourse. Based upon a careful review of the entire record, the Court concludes that Plaintiff has failed to offer any evidence of protected speech relating to sexual harassment.

### D.  Reasonable Accommodation Dispute

Plaintiff alleges that she engaged in protected speech by "complain[ing] that the USPS failed to comply with the Rehabilitation Act." Plaintiff's Opposition at 4. As with her assertion concerning sexual harassment, however, Plaintiff's "speech" was that the USPS had failed to follow its own procedures, not that it was, in fact, violating the Act. The form and context of Plaintiff's speech shows that she advocated for the involvement of a committee that she chaired and only discussed the matter with her direct supervisor. Based upon this record, the content, form, and context of the speech demonstrates that Plaintiff did not "speak as a citizen on a matter of public concern."

Moreover, even if Plaintiff's speech were protected, there is no evidence to suggest that Mr. Donahue ever held any negative animus toward Plaintiff as a result of that speech. As Plaintiff admits, after hearing Plaintiff's opinion, Mr. Donahue agreed that she was right and instructed her to have the committee consider the issue. There is no evidence from which a reasonable jury could conclude that this speech was a substantial or motivating factor in any adverse employment action. Accordingly, Plaintiff's claim on this point must fail.

### E.  Union Grievance

In opposing Defendant's Motion for Summary Judgment, Plaintiff makes mention of the letter she wrote to the union president concerning the grievance of a former

employee. As Plaintiff herself admits, this speech "constituted a personal decision to challenge an office policy that she believed undermined the grievance process." Plaintiff's Opposition at 10. Plaintiff fails to even assert, let alone offer any argument, that this letter constituted speech "as a citizen on a matter of public concern." Having fully reviewed the content, form and context of the speech, in light of the record as a whole, the Court concludes that this letter is not protected speech.

### F. Investigation Email

Lastly, Plaintiff seeks to base her First Amendment claim on an email she sent in January 2005, critiquing a management investigation and voicing her disagreement with the investigation's conclusions. As with her letter to the union president, Plaintiff fails to offer any argument as to how this email constitutes speech "on a matter of public concern." Instead, Plaintiff focuses on the fact that Plaintiff sent this email shortly after being told by her supervisor that she should not be involved in management investigations. While this may offer some evidence that Plaintiff was speaking "as a private citizen," the content and the form of her speech demonstrate that she was not speaking "on a matter of public concern." The content of the speech is not inherently of public concern, as it addresses concerns relating to the internal operations of the USPS and not directly impacting the public. Likewise, the form of the message, sent to other USPS employees, shows no intention to contribute to any public discussion of the issue.

Furthermore, even if the speech here does further some First Amendment interests of the plaintiff and the public, it is clearly outweighed by the USPS's interest in functioning efficiently. As Plaintiff candidly admits, she sent this email shortly after being instructed by her supervisor that involvement in management investigations was

inconsistent with her position.  In beginning her email Plaintiff even explains that she has received this instruction, but then states, "Having said this, however, I feel compelled to offer my assessment of the recent [management investigation]."  Exhibit 12.  Such a blatant refusal to abide by her supervisor's instructions, coupled with Plaintiff's eagerness to publicize her violation of those instructions to others within the USPS, presents at least some obstacle to the government's ability to function efficiently.  While in some cases the speech at issue may make such expression acceptable, and perhaps even desirable, this is not such a case.  Here, the interests of the USPS outweigh those of the Plaintiff and the public, and, accordingly, Plaintiff's message does not constitute protected speech.

Lastly, even if this message were protected speech, no reasonable jury could conclude that Plaintiff suffered an adverse employment action as a consequence of that speech.  The email was sent in January of 2005, *after* Plaintiff had been removed from management investigations and *after* Plaintiff claims she was denied a training opportunity.  Plaintiff fails to point to any evidence in the record of a negative employment action occurring after she sent this message.  Accordingly, even if the speech were protected, no trialworthy issue remains.

## IV.  Conclusion

For the reasons stated above, the Court **ORDERS** that summary judgment in favor of Defendant be, and it is hereby, **GRANTED** on Count V of the Amended Complaint.

>                              /s/ Gene Carter_____
>                              Gene Carter
>                              Senior United States District Judge

Dated this 27th day of July, 2006.